**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**DELTA NATURAL KRAFT LLC**                                             **PLAINTIFF**


**v.**                              **CASE NO. 5:09-CV-00217 BSM**


**GRAPHIC PACKAGING INTERNATIONAL INC.**                    **DEFENDANT**

## ORDER

Graphic Packaging International ("Graphic") moves for partial summary judgment on

Delta Natural Kraft's ("Delta's") promissory estoppel and unjust enrichment claims and on

the availability of expectation damages. For the reasons set forth below, Graphic's motion

for partial summary judgment is denied.

### I. FACTS

The undisputed facts are as follows: On October 22, 2008, Graphic and Delta entered

in to an agreement whereby Graphic would purchase and Delta would sell a target three-

thousand tons of kraft paper each month from August 2008 through December 2010. Pl.'s

Fct. Stmnt. Resp. ¶ 3, ECF No. 49; Def.'s Summ. J. Br., Ex. C, ECF No. 43. For eight

months the parties did business pursuant to the agreement without significant dispute. Then

in April and May 2009, Graphic significantly reduced the volume of paper it purchased from

Delta, falling well short of the three-thousand ton monthly target. Finally, in June, Graphic

purchased no paper from Delta, and Delta filed this lawsuit in July 2009. Pl.'s Fct. Stmnt.

Resp. ¶¶ 28–30.

In August 2009, Graphic sent Delta a letter purporting to cancel the agreement and claiming that it was entitled to do so pursuant to the "General Terms and Conditions" attached to the agreement as exhibit A. *Id.* ¶ 31. The parties dispute the meaning and impact of these general terms and conditions as well as the efficacy of this letter in terminating the agreement.

The parties' main dispute, however, is over the meaning of the word "target" as used in the October 22 agreement. Delta contends that this the use of the word "target" obligated Graphic to purchase an average of three-thousand tons of paper each month over the duration of the contract. Graphic contends that "target" meant it was not obligated to purchase any specific amount of paper. The parties agree, however, that the meaning of the word "target" should be left to a jury.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to the non-nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008). Delta cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1985). If the facts alleged by Delta, when viewed in the light most favorable to its case, would not allow a reasonable jury to find in its favor, then summary judgment should be granted in favor of Graphic. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

III. DISCUSSION

Graphic moves for summary judgment on three issues: (1) Delta's promissory estoppel claim; (2) Delta's unjust enrichment claim; and (3) whether Delta is entitled to expectation damages for any losses suffered after Graphic purportedly cancelled the agreement on August 7, 2009.

A.      Promissory estoppel and unjust enrichment

Graphic argues that it is entitled to summary judgment on Delta's promissory estoppel and unjust enrichment claims because the undisputed facts show that the parties' relationship was governed by a contract, and a party may only recover under these theories in the absence of a formal contract. Def.'s Summ. J. Br. 9–10, ECF No. 43. Delta responds by arguing that the Federal Rules of Civil Procedure allow it to set forth multiple claims either alternatively or hypothetically, making it permissible to seek recovery for both contract and promissory estoppel.  Pl.'s Summ. J. Br. 15–16, ECF. No. 48.

Promissory estoppel may not simply be used as a vehicle to engraft into an existing contract a promise that differs from its written terms. *Halls Ferry Invs., Inc. V. Smith*, 985 S.W.2d 848, 853 (Mo. App. 1998). It is a basis for recovery only when the formal elements of a contract do not exist.  *Bank of N. Ark v. Tri-State Propane*, 203 S.W.3d 124, 127 (Ark. Ct. App. 2005). The same is true of unjust enrichment. *Servewll Plumbing LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005). The undisputed facts in this case, however, do not establish the existence of a valid contract as a matter of law.

In Arkansas, an enforceable contract is based on the mutual promises of the parties,

and it must impose on them mutual obligations. *Showmethemoney Check Cashers v. Williams*, 27 S.W.3d 361, 366 (Ark. 2000). Generally, each party to the contract must make a promise that binds it to the other party. If one those  promises fails to fix any real liability upon the promising party, then the agreement lacks sufficient consideration and it is not a valid contract.  *Townsend v. Standard Indus., Inc.*, 363 S.W.2d 535, 537 (Ark. 1962).

A jury could agree with Graphic that the word "target" did not obligate it to purchase any specific tonnage of paper or even any paper at all. Since this interpretation of the word "target"might fail to fix any real liability on Graphic, there would be a significant question about the sufficiency of the consideration and the validity of the contract. Consequently, Delta's promissory estoppel and unjust enrichment claims turn on the central factual question in this case: the meaning of the word "target" in the agreement. In deciding this question, a reasonable jury could find that the parties did not enter into a valid contract, and that Delta is entitled to recover under an alternate theory.

Delta does admit that the October 22 agreement is the document governing the relationship between the parties, but this admission falls short of conceding that the agreement constitutes a valid contract. Plf.'s Fact Resp. ¶ 26, ECF. No. 49. An agreement is a valid contract only if it satisfies certain specific legal requirements. *See*, *Gentry v. Hanover Ins. Co.*, 284 F. Supp. 626, 631 (W.D. Ark. 1968). Whether the terms of the agreement between Delta and Graphic satisfy the specific requirements of a valid contract is partially dependent on the meaning of the word "target," and is thus a question of fact not appropriate for summary judgment.

Graphic argues that it is entitled to summary judgment because Delta has failed to develop facts demonstrating the existence of damages under a theory of promissory estoppel or unjust enrichment. Although Graphic is correct to point out that the record is slim on the these issues, Delta has presented testimony that it incurred opportunity costs and spent money to perform under the contract. Plf.'s Fact Resp. ¶ 33, Ex. E, ECF No. 49. Although Delta does not present specific numbers to quantify the amount of damages under these theories, viewing the evidence in its favor, there is still a triable issue of fact regarding the existence and amount of damages for the promissory estoppel and unjust enrichments claims.

B.      Expectation damages for losses suffered after August 7, 2009

Graphic also moves for summary judgment on any expectation damages that Delta might have incurred after August 7, 2009. On that date, Graphic sent a written "change order" purporting to cancel all current and future purchase orders. At issue is whether Graphic could cancel the entire contract at will.  If it could, then Delta would not be entitled to any expectation damages for the period after Graphic cancelled the contract.

To demonstrate that it could cancel the agreement at will, Graphic points to what it claims is a termination clause in Section 1 of the General Terms and Conditions, which is attached to the agreement as exhibit A. Def.'s Summ. J. Br. 11–12, ECF No. 43; *Id.* Ex. C. Delta responds that this section, by its plain language, at most allows Graphic to change or cancel existing orders. Pl.'s Summ. J. Br. 9–10. ECF No. 48. According to Delta, these General Terms and Conditions are attached as an exhibit to the agreement because they are the terms and conditions for individual purchase orders and not the agreement as a whole.

*Id*. 8–10. Delta, also points out that the agreement contains a provision expressly setting a definite duration and this provision takes precedence over the General Terms and Conditions. *Id*. 12–14.

The parties' arguments are essentially a debate over the meaning of specific terms in the agreement and whether the General Terms and Conditions apply to the entire contractual relationship or just to individual purchase orders. This debate raises triable issues of fact best left for the jury.

It is also questionable whether Section 1 of the General Terms and Conditions even allows Graphic to cancel individual monthly purchases, let alone the contract as a whole. This is because the first paragraph of the General Terms and Conditions contains language limiting its applicability as follows: "In the even of any inconsistency between these General Terms and Conditions and those elsewhere set forth herein or any supplemental conditions attached hereto, the face or such supplemental conditions shall prevail." Def.'s Summ. J. Br. Ex. C, ECF No. 43. Based on this language, the terms of the Purchasing/Supply Agreement may prevail over the General Terms and Conditions.

This means that Graphic may not have even been entitled to cancel its monthly purchase orders. The Purchasing/Supply Agreement sets a specific duration for the contract and a target volume for the purchases each month. *Id*. There appears to be an inconsistency between the General Terms and Conditions, which may allow Graphic to cancel specific purchase orders and effectively refuse to purchase paper each month, and the Purchasing/Supply Agreement, which may expressly obligate Graphic to purchase a target

three-thousand tons of paper each month for the duration of the agreement. In the event of an inconsistency, the Purchasing/Supply Agreement could very well could take priority. This would mean that Graphic had to purchase a target of three-thousand tons of paper each month and was not entitled to cancel individual orders or the contract as whole.

All of this is speculative and hypothetical, with the outcome contingent on the meanings of terms in the contract, and particularly on the meaning of the word "target." Thus, triable issues of fact remain about the meaning of the General Terms and Conditions and Graphic's obligations under the agreement, and summary judgment is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Graphic's motion for partial summary judgment is denied.

IT IS SO ORDERED this 3rd day of December, 2010.

_____
UNITED STATES DISTRICT JUDGE